UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ESTATE OF JARON AUSBON, ET AL

CIVIL ACTION

VERSUS

NO. 12-200-JJB

N. BURL CAIN, WARDEN, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY, ET AL

## RULING ON DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss pursuant Federal Rule of Civil Procedure 12(b)(6) by the Defendants, N. Burl Cain, Troy Poret, Jamie Broussard, Grady Paul Gagnard, Scott Adams, Mike Varner, Troy Desselle, and James LeBlanc (Doc. 21). The Motion is opposed (Doc. 24). The Court has jurisdiction under Title 28 of the United States Code, Section 1331. Oral argument is unnecessary.

I.     Facts

The following facts are taken from the Complaint and are taken as true for purposes of this Motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Jaron Ausbon was an inmate at the Louisiana State Penitentiary in Angola, Louisiana ("LSP") at all times relevant to this lawsuit, up until his death on April 11, 2011. This lawsuit is filed under Title 42 Section 1983 and the Louisiana Survival Statute by Ausbon's estate, his daughter, Keara Green, Miesha Williams, on behalf of her minor biological child with Jaron Ausbon, Alaysia Ausbon, and Ebony Fleming, on behalf of her minor biological child with Jaron Ausbon, Chase Fleming. It alleges that the Defendants, individually and in their official capacities as guards or prison officials, killed Ausbon or permitted him to commit suicide under their watch. The suit is composed of claims of excessive force and/or cruel and unusual punishment, deprivation of life without due process under the Fourteenth Amendment to the United States Constitution, failure to provide medical

1

care and treatment, failure to train or supervise, retaliation in violation of the First Amendment to the United States Constitution, and a survival action.

In support of their claims, the Plaintiffs allege that Ausbon was the subject of mistreatment by LSP guards and prison officials beginning on February 1, 2011. Background allegations include Ausbon's improper administrative segregation, to which Ausbon responded by going on a hunger strike, for which he was retaliated against by prison guards or officials, including a Major Braggassie, who falsely stated that Ausbon was no longer on a hunger strike. This resulted in Ausbon's not being allowed to speak with the warden or receive medical treatment. The Plaintiffs allege Department of Corrections regulations require prison officials to report to Secretary of Public Safety and Corrections, James LeBlanc, if any prisoner is on a hunger strike for more than three days. This regulation is alleged to require that the inmate on the hunger strike be given medical treatment.

Ausbon was written up for various other contraband and behavior violations, at least one of which resulted in his placement in administrative segregation. One such event included Broussard allegedly finding a substance in Ausbon's cell that a prison official said tested positive for cocaine. On March 30, 2011, Ausbon wrote an emergency Administrative Remedy Procedure ("ARP") to Warden Cain describing his placement in administrative segregation for allegedly conspiring to bring drugs into the facility, and requesting the warden to investigate. Ausbon included in this ARP that he feared for his life and was afraid that the LSP guards were going to kill him.[1] On March 31, 2011, Ausbon went on another hunger strike in protest of a drug charge, abuse, and fear of retaliation and a plot to kill him. Ausbon was charged with behavior violations on April 3, 2011 and sprayed with a chemical agent by a Lieutenant Savoy. Ausbon wrote an ARP to Investigative Services on April 3, 2011 about the incident that day, his

---

[1] Ausbon allegedly also sent this ARP to his attorney, mother, brother, fiancé, and the Louisiana Governor.

hunger strike, and his fear for his life.[2]  He explained that he was maced for refusing to come off

of his hunger strike.  Lieutenant Savoy fabricated a disciplinary report against another inmate for

questioning Savoy's actions regarding the macing incident.  Ausbon requested medical attention

on April 4, 2011 because he was weak and dizzy.  On April 7, 2011, Ausbon filed another ARP

to Cain claiming other inmates were allowed by two prison officials to steal his property.  On

April 10, 2011, Broussard falsely claimed that Ausbon was off of his hunger strike, thwarting his

efforts to communicate with the warden or regional warden.  Also that day, Varner and Gagnard

threatened Ausbon's life.  That night, Adams warned Ausbon that his life was in danger.  On

April 11, 2011, in an attempt to get to the medical treatment facility at LSP and avoid retaliation

from the Defendants, Ausbon loosely tied a sheet around his neck in hopes of catching the tier

walker's attention, who would notify the guard and the medical response team.  The tier walker

noticed, and informed Gagnard and Varner.  Adams was instructed to retrieve the first aid kit,

which he did, and thereafter maintained the log book of who came and went from the tier.

Gagnard responded to Cell 2 and saw Ausbon with a white sheet around his neck and his feet

touching the ground.  Gagnard ordered Desselle to open Cell 2, upon which time a struggle

between Gagnard and Ausbon ensued, leading to Ausbon's death.  The Plaintiffs claim it is

unclear who, if anyone, other than Gagnard, participated in the struggle.  Gagnard is alleged to

either have pulled the sheet around Ausbon's neck to kill him, or to have watched Ausbon kill

himself.  The Complaint provides a number of inmate accounts of what they heard at this time.

Gagnard performed resuscitation on Ausbon, while Varner retrieved a breathing device.  Either

Gagnard or Varner inserted the breathing device, which, according to the doctor that performed

the autopsy, was inserted into Ausbon's stomach rather than his lungs.  Ausbon was pronounced

dead at 3:58 am on April 11, 2011.  His autopsy revealed bruising on his scrotum and right eye.

---

[2] Ausbon allegedly also sent this ARP to his attorney, Warden Cain, the Louisiana Governor, and the F.B.I.

## II.   Motion Standard

Under Federal Rule of Civil Procedure 12(b)(6), on a motion to dismiss for failure to state a claim, the Court accepts all well-pleaded, non-conclusory facts in the complaint as true. *Id*.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*  "[A] formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint that pleads facts merely consistent with a defendant's liability "stops short of the line between possibility and plausibility." *Id.* at 557.  When well-pleaded factual allegations populate the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.  Courts may consider not only the complaint itself, but also documents attached to the complaint or documents incorporated into the complaint by reference.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007). The facts in the complaint are viewed collectively, not scrutinized in strict isolation.  *Id.*

## III.   Analysis

The arguments in the Motion to Dismiss are: (1) the claims asserted against the Defendants in their official capacities are barred by the Eleventh Amendment; (2) the action is prescribed as to all alleged acts occurring more than one year prior to the date of filing suit; (3) the Plaintiffs have failed to state an excessive force claim against Broussard, Varner, Desselle, and Adams; (4) the Plaintiffs have failed to state a constitutional claim against the defendants for deliberate medical indifference; (5) the Plaintiffs have failed to state a constitutional claim

against LeBlanc, Cain, and Poret for failure to train and supervise; and (6) the Plaintiffs have failed to state a retaliation claim against Gagnard, Broussard, Desselle, Adams, and Varner.

## A.  Eleventh Amendment

The Defendants argue that there exist no actionable claims against them in their official capacities since claims for monetary damages against defendants in their official capacities are treated as a suit against the state and are barred by the Eleventh Amendment.  This argument is unopposed.  The Defendants are correct.  "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Suits against state officials in their official capacity should be treated as suits against the state.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  The bar on damages actions against states in federal court therefore remains in effect when State officials are sued for damages in their official capacity.  *Graham*, 473 U.S. at 169.  An exception is when a state official is sued for injunctive relief, since official-capacity actions for prospective relief are not treated as actions against the state.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n. 10 (1989).  Additionally, because the real party in interest in an official-capacity suit is the governmental entity, suits against state officials in their official capacity are allowed when the entity's custom or policy played a part in the violation of a federal law.  *Hafer*, 502 U.S. at 25.  The Plaintiffs do not claim that a governmental entity's custom or policy played a part in the Defendants' alleged violation of federal law, and the Plaintiffs do not seek injunctive relief.[3] Accordingly, all claims by the Plaintiffs against the Defendants in their official capacities are barred by the Eleventh Amendment.

---

[3] The Complaint mentions the custom, policy, and practice of encouraging, condoning, tolerating, and ratifying the use of excessive force by Angola guards, and the policies, customs, or practices in failing to properly train and supervise employees.  Compl. ¶¶ 111–12.  This is not in reference to a governmental entity, but rather in reference to Defendants Cain, Poret, and LeBlanc.

B.  Prescription

The Defendants argue the Plaintiffs' claims arising more than one year prior to the filing

suit on April 9, 2012 should be dismissed as prescribed.   The Defendants argue that the

complaint alleges violations of the decedent's rights beginning on February 1, 2011, and

continuing until the decedent's death on April 11, 2011.  The Defendants argue that each claim

under Section 1983 accrued separately and is subject to its own prescriptive period, that the

decedent knew or had reason to know of the injuries that form the basis for these causes of action

immediately after each alleged wrongful act occurred, and that it is evident from the face of the

complaint that the Plaintiffs' action is prescribed as to all claims arising more than one year prior

to the date of filing suit on April 9, 2012.   The Plaintiffs argue that they timely filed their

Complaint, and that it is clear from the complaint that they are seeking relief for the incident that

occurred on April 11, 2011.

No federal statute of limitations exists for Section 1983 claims, so the statute of

limitations is "that which the State provides for personal-injury torts."  *Wallace v. Kato*, 549 U.S.

384, 387 (2007).  The parties agree that in Louisiana, the prescription period is one year.  La.

Civ. Code Art. 3492.  "Prescription commences when a plaintiff obtains actual or constructive

knowledge of facts indicating to a reasonable person that he or she is the victim of a tort."

*Campo v. Correa*, 2001-2707, p. 11–12 (La. 6/21/02); 828 So.2d 502, 510.   Typically, "the

burden of proof is on the party pleading prescription."  *Rizer v. American Sur. and Fidelity Ins.

Co.*, 95-1200, p. 3 (La. 3/8/96); 669 So.2d 387, 388.  The Defendants argue, in accordance with

Louisiana law, that the burden switches to the Plaintiffs since the face of the complaint indicates

that more than a year has passed since some of the events complained of.  *Id.*  The Plaintiffs

argue that on the face of the Complaint, the lawsuit was timely filed.

6

The Plaintiffs are correct that on the face of their Complaint, the lawsuit was timely filed. All but one of the Plaintiffs' claims focus on allegations as to what caused Jaron Ausbon's death, which occurred on April 11, 2011.  Compl. ¶¶ 83–84, 86, 88, 90, 93, 95–96, 101, 103, 105, 113, 118, 122–23, 127.  The claim that does not focus on his death is the part of the Plaintiffs' third claim for relief alleging that "Defendants failed to examine, assess, treat, and care for Jaron when he was on his hunger strike and failed to provide him medical care," despite knowledge of his serious medical needs, placing him at risk of substantial physical harm.  *Id.* at ¶ 102.  The complaint alleges that Mr. Ausbon was on a hunger strike in the days leading up his death, specifically as late as April 10, 2011.  *Id.* at ¶ 58.  To the extent that the Plaintiffs' third claim for relief is referring to this hunger strike, the claim is not prescribed on its face.[4]  Since, on the face of the Complaint, the Plaintiffs' claims are not prescribed, the burden is on the Defendants to prove prescription.  They have failed to do so.  The Plaintiffs' claims are therefore not prescribed.

### C.  Excessive Force

The Defendants argue the Plaintiffs fail to state an excessive force claim against Broussard, Varner, Desselle, and Adams upon which relied can be granted.  The Eighth Amendment to the United States Constitution prohibits prison officials from inflicting cruel and unusual punishments, including excessive force against prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  "Whenever prison officials stand accused of using excessive physical force . . . , the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503

---

[4] To the extent that the Plaintiffs are basing part of their third claim for relief on a hunger strike occurring prior to April 9, 2011, the burden switches to the Plaintiffs since the claim is prescribed on its face.  They do not satisfy this burden.

U.S. 1, 6–7 (1992).[5]   "[A] supervisor may be held liable if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."   *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).   "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."   *Id.*

The Defendants argue that the Complaint states in a conclusory fashion that Broussard, Gagnard, Varner, Desselle, and Adams engaged in excessive force, and that the Complaint is void of factual allegations indicating overt use of physical force of any kind on Ausbon during the events complained of, or that they implemented a constitutionally deficient policy.

The Plaintiffs argue that each of the Defendants had some role in the mistreatment of Ausbon that led to his death, whether by physically harming him or knowing of the substantial risk of serious harm Ausbon faced and failing to do anything to protect him.   The Plaintiffs argue they have alleged that Broussard falsely claimed that Ausbon was off of his hunger strike on April 10, 2011, so that he would be prohibited from making contact with the warden or regional warden and be at the mercy of Desselle, Adams, Varner, and Gagnard. The Plaintiffs also argue they have alleged that Desselle and Adams stood by and watched as the struggle between Gagnard and Ausbon ensued. Plaintiffs argue they have sufficiently alleged that the Varner was quite possibly involved in the physical struggle that resulted in Ausbon's death, and that Varner may have put the breathing apparatus into Ausbon's stomach. Plaintiffs argue that they have further alleged "[n]one of the individual Defendant guards took reasonable steps to protect Jaron Ausbon from the objectively unreasonable use of force of the other Defendant guards, despite

---

[5] The Plaintiffs cite the standard for denying humane conditions of confinement, which is a separate cause of action. *See Farmer*, 511 U.S. at 832.

being in a position to do so and knowledge of the threats against Jaron."  The Plaintiffs further argue it is unclear which Defendants, if any, were acting in a supervisory role on April 11, 2011.

Of the Plaintiff's allegations, the only one that could plausibly give rise to entitlement to relief for applying force is the allegation that Varner inserted the breathing apparatus into Ausbon's stomach.  The Plaintiffs make no allegations that Broussard, Desselle, or Adams used force against Ausbon.  Nor do the Plaintiffs allege that a policy existed that was so deficient that it was a repudiation of Ausbon's constitutional rights and was the moving force of the constitutional violation.  No factual allegations regarding Desselle are made in the Complaint other than that he was ordered to open Cell 2.  No allegations are made connecting Broussard to any alleged use of excessive force.  The Complaint alleges that Varner and Adams were present at the time of alleged excessive force, and the allegation that "[n]one of the individual Defendant guards took reasonable steps to protect Jaron Ausbon from the objectively unreasonable use of force of the other Defendant guards, despite being in a position to do so and knowledge of the threats against Jaron," could plausibly give rise to entitlement for relief for supervisory liability against Varner and Adams.  Compl. ¶¶ 63, 75–76, 87.  Therefore, the Plaintiff's excessive force claims against Broussard and Desselle fail to state claims upon which relief can be granted.

### D.  Deliberate Medical Indifference

The Defendants argue the Plaintiffs fail to state a claim for deliberate medical indifference against the Defendants upon which relief can be granted.  "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's

needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05.

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[E]very claim by a prisoner that he has not received adequate medical treatment," does not, however, violate the Eighth Amendment. *Estelle*, 429 U.S. at 105. "An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain." *Id.* "Wanton means reckless-without regard to the rights of others . . . ." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

The Defendants argue the allegations that LeBlanc, Cain, and Poret are generally responsible for their subordinates' alleged failure to provide medical care are insufficient, since they make no specific factual allegations that would lead a court to conclude that these Defendants directly or overtly violated Ausbon's constitutional right by denying him medical care or failing to provide medical care. The Defendants also argue that allegations the Defendant corrections officers failed to treat Ausbon while on a hunger strike are insufficient to state a claim. The Defendants further argue that the complaint contains no allegations that prison doctors or guards intentionally denied or delayed access to medical treatment or intentionally interfered with treatment once prescribed. Defendants finally argue the only relevant allegation not prescribed states Ausbon was denied access to the local warden or regional wardens.

Plaintiffs' claims against Adams, Broussard, Varner, and Gagnard plausibly give rise to an entitlement of relief, as they allege that the "Defendants knew or should have known of Jaron

10

Ausbon's life-threatening condition when he went on multiple hunger strikes . . . and when Defendants[] either affirmatively killed him or assisted him in suicide,"[6] that the "Defendants failed to examine, assess, treat and care for Jaron when he was on his hunger strike and failed to provide him medical care," and that the "Defendants denied Jaron Ausbon medical care despite their knowledge of his obvious medical needs, placing him at risk of substantial physical harm." Compl. ¶¶ 101–02.  This states a claim against Adams, Broussard, Varner, and Gagnard, because each of them is alleged either to have known of Ausbon's hunger strike, that Ausbon's life was in danger, or that Ausbon had a sheet tied around his neck, and that they failed to provide Ausbon medical care.  *Id.* at ¶¶ 59–64, 102.

As it is not alleged that Desselle had knowledge that a serious risk of substantial harm existed, the Plaintiffs fail to state a claim against him for deliberate medical indifference.  The Plaintiffs do not assert that they have alleged sufficient facts to state claims for deliberate medical indifference against Poret or LeBlanc; nor do they argue for liability under the law in a supervisory capacity.  Plaintiffs mention an allegation that Cain had knowledge of Ausbon's hunger strike, but failed to provide him medical care.  Compl. ¶¶ 47, 51, 55, 101–02.  However, no allegations of this nature are made involving the year before the lawsuit was filed.  Accordingly, the Plaintiffs fail to state claims for deliberate medical indifference against Cain, LeBlanc, and Poret.

### E.  Failure to Supervise and Train

The Defendants argue the Plaintiffs fail to state a cognizable constitutional claim against LeBlanc, Cain, and Poret for failure to supervise and/or train.  "A supervisor may be held liable under § 1983 for failure to train or supervise subordinates if (1) the supervisor failed to train or

---

[6] This sentence also references Mr. Ausbon being maced, but it is a separate incident occurring more than one year before the filing of the suit, so it cannot be the basis of the claim.  Compl. ¶ 51.

supervise; (2) a causal link exists between the failure and violation of plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Brown v. Callahan*, 623 F.3d 249, 254 n.1 (5th Cir. 2010). "[P]roof of deliberate indifference[] generally requires a showing of more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003). "[D]eliberate indifference generally requires that a plaintiff demonstrate at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Id.* However, a single-incident exception exists, recognizing "that in a limited set of cases, a plaintiff, unable to show a pattern of constitutional violations, may establish deliberate indifference by showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Id.* at 372–73. The exception is narrow, only applying "where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Id.* at 373.

Defendants assert that the Plaintiffs' claims of failure to train and/or supervise subordinate officers are merely conclusory statements without supporting factual allegations, that the allegations are insufficient to establish a causal link, and that the Plaintiffs fail to state a deliberate indifference claim for failure to train and/or supervise. Plaintiffs argue that the claim is sufficient since they allege the existence of an official Department of Corrections regulation providing that hunger strikes lasting more three days must be reported to LeBlanc and that the inmate must be provided medical care. Plaintiffs then point to the allegation that despite knowledge of Ausbon's hunger strike, Broussard falsely claimed that Ausbon was off of his hunger strike. Plaintiffs argue that they allege the Defendants knew or should have known that

12

Ausbon was suffering from a life-threatening condition when he went on multiple hunger strikes, but the Defendants either affirmatively killed him or assisted in his suicide.  Taken, as true, the allegations about the regulation and the prison guards and/or officials' failure to comply with it could plausibly satisfy the first prong of failure to train or supervise and the second prong requiring a causal link between the failure and the violation of constitutional rights.

Next, the Defendants argue "a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation" has not been alleged, so the Plaintiffs' allegations could not plausibly amount to deliberate indifference. Given the factual allegations in the Complaint, it is plausible that the Plaintiffs could satisfy the this prong by presenting a pattern of violations of the regulation requiring prison officials to report a hunger strike lasting three or more days and requiring medical treatment be given to the striking inmate.  Compl. ¶¶ 30–36, 40, 51, 54, 58.  Accordingly, it is plausible for the Plaintiffs to be entitled to relief from Cain, Poret, and LeBlanc for failure to train and/or supervise.

### F.   Retaliation

The Defendants argue the Plaintiffs fail to state a retaliation claim against Gagnard, Varner, Desselle, Adams, and Broussard.  "A prison official may not retaliate against . . . an inmate for complaining through proper channels about a guard's misconduct." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006).  "To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).  "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Morris*, 449 F.3d at 684.

13

"The inmate must allege more than his personal belief that he is the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). "The inmate must produce direct evidence of motivation or . . . allege a chronology of events from which retaliation may plausibly be inferred." *Id.*

The Defendants argue the Plaintiffs fail to sufficiently allege a chronology of events through which retaliation can be plausibly inferred and fail to allege that the Defendants engaged in a retaliatory adverse act. They claim the Plaintiffs have merely stated the Plaintiffs' personal beliefs that Ausbon was retaliated against. The Defendants further argue that the Complaint is void of specific factual allegations that would lead the Court to conclude Adams, Broussard, Desselle, and Varner engaged in a retaliatory adverse act. Finally, the Defendants argue that Gagnard is the only Defendant alleged to have engaged in the retaliatory act complained of.

The Plaintiffs argue they have affirmatively pled all elements by stating that the Defendants retaliated against Ausbon for engaging in constitutionally protected activity, namely reporting the LSP guards' constitutional violations by writing administrative regulation procedure reports and sending them to the governor, the FBI, Investigative Services, and others. The Plaintiffs argue they satisfy the third element by pleading that the Defendants intentionally, knowingly, recklessly, or willfully retaliated against Ausbon for exercising his First Amendment rights. The Plaintiffs contend that but for the Defendants' retaliatory conduct, Ausbon would not have been killed or been permitted to commit suicide while the Defendants stood by indifferently. The Plaintiffs contend that they set forth direct evidence in alleging that Broussard falsely alleged that Ausbon had ceased his hunger strike, and by alleging that Gagnard and Varner threatened Ausbon's life. The Plaintiffs assert that their allegations contain a specific chronology of events establishing that Ausbon was killed for speaking out against his

14

unconstitutional treatment at the hands of the Defendants.  Specifically, the Plaintiffs point to allegations that Ausbon wrote ARP letters, stated he had been harassed and feared for his life, was warned by Adams that his life was in danger, and was threatened by Gagnard and Varner.

The Plaintiffs fail to state a claim against Desselle, as they allege no direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. They fail to state a claim against Adams, as the Complaint contains no factual allegations that could plausibly lead to a determination that he intended to retaliate against Ausbon for his exercise of a constitutional right, that Adams engaged in a retaliatory adverse act, or that causation existed.  They fail to state a claim against Varner, Broussard, or Gagnard, as the Complaint contains no factual allegations that could plausibly lead to the determination that any of them intended to retaliate against Ausbon for the exercise of a constitutional right, or that causation existed.  The Plaintiffs' retaliation claim is therefore dismissed for failing to state a claim upon which relief can be granted.

IV.    Conclusion

Accordingly, the Defendants' Motion to Dismiss (Doc. 21) is **GRANTED IN PART** and **DENIED IN PART**.  **IT IS HEREBY ORDERED** that the Plaintiffs' claims against the Defendants in their official capacities, against Jamie Broussard and Troy Desselle for excessive force, against Troy Desselle, N. Burl Cain, Troy Poret, and James LeBlanc for deliberate medical indifference, and against the Defendants for retaliation, are **DISMISSED**.[7]

Signed in Baton Rouge, Louisiana, on January 14, 2013.

_____
**JAMES J. BRADY, DISTRICT JUDGE**

---

[7] The Court would appreciate if, in future briefs, counsel for the Defendants would pincite the page location of statements they are referencing in cases.